IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, and BROADWING COMMUNICATIONS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. _____ |
| ILLINOIS BELL TELEPHONE COMPANY, INDIANA BELL TELEPHONE COMPANY, INCORPORATED, MICHIGAN BELL TELEPHONE COMPANY, NEVADA BELL TELEPHONE COMPANY, THE OHIO BELL TELEPHONE COMPANY, PACIFIC BELL TELEPHONE COMPANY, THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, SOUTHWESTERN BELL TELEPHONE COMPANY, and WISCONSIN BELL, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, Level 3 Communications, LLC and Broadwing Communications, LLC (collectively, the "Level 3 Companies"), by and through their attorneys, and for their complaint against Illinois Bell Telephone Company, *et al.*, respectfully allege as follows:

## NATURE OF THE CASE

1.      Level 3 Communications, LLC ("Level 3") operates a communications network it uses to provide a variety of local, national, and international communications services.  Among other things, Level 3 is a competitive local exchange carrier ("CLEC") in many states, and in that capacity provides various telecommunications services to its customers.

2.      Level 3's parent company has acquired certain other CLECs.  Two such entities are Plaintiff Broadwing Communications, LLC ("Broadwing") and several then-Broadwing entities that operated as Focal Communications and ICG Telecom Group, Inc. ("ICG").  The Focal Communications entities and ICG each had interconnection agreements with various AT&T entities.  The Focal entities have been merged into Broadwing.  ICG has been merged into Level 3.

3.      For customers of the Level 3 Companies to send telephone calls and other communications traffic to, and receive telecommunications traffic from, customers served by other networks, the Level 3 Companies must interconnect their networks with other networks, including the networks owned and operated by incumbent local exchange carriers ("ILECs"), who formerly were state-regulated monopolies, such as the Defendants herein.  This interconnection is accomplished by means of physical facilities (copper wires, fiber optic cables, etc.) and associated services, typically provided by ILECs, which physically link networks, permitting the mutual exchange of traffic.

These arrangements are referred to in the communications industry as "entrance facilities."

4.      Pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.* (the "Telecom Act"), all ILECs, including Defendants, are required to provide interconnection to CLECs at cost-based rates, determined using a methodology established by the Federal Communications Commission ("FCC").   *See* 47 U.S.C. §§ 251(c)(2), 252(d).

5.      To fulfill the Defendants' obligations under the Telecom Act, Defendants entered into several "Interconnection Agreements" ("ICAs") pursuant to Sections 251 and 252 of the Telecom Act with the Level 3 Companies.  For example, Defendants entered into an "Interconnection Agreement under §§ 251 and 252 of the Telecommunications Act of 1996," as amended, with Level 3 (the "Level 3 ICA"), which, among other things, requires Defendants to provide interconnection to Level 3 at cost-based rates.

6.      In violation of the ICAs and the Telecom Act, Defendants have refused to provide the Level 3 Companies with entrance facilities for interconnection at cost-based rates.  Instead, Defendants have unilaterally imposed substantially higher rates for interconnection, known as "switched access" rates.  Because the Level 3 Companies need to interconnect with Defendants' networks to provide their telecommunications services, the Level 3 Companies have had no choice but to pay the higher rates.

Defendants' illegal, unilateral, unjustified, oppressive, and unreasonable acts have caused the Level 3 Companies to incur millions of dollars in damages.

## THE PARTIES

7.     Level 3 is a Delaware limited liability company whose sole member is Level 3 Financing, Inc.  Level 3 Financing, Inc., is a Delaware corporation with its principal place of business in Broomfield, Colorado.  Level 3 is the successor in interest to ICG.

8.     Broadwing Communications, LLC is a Delaware limited liability company whose sole member is Level 3 Communications, LLC.  Broadwing's principal place of business is in Broomfield, Colorado.

9.     Illinois Bell Telephone Company ("Illinois Bell") is an Illinois corporation, with its principal place of business in Illinois.

10.     Indiana Bell Telephone Company Incorporated ("Indiana Bell") is an Indiana corporation, with its principal place of business in Indiana.

11.     Michigan Bell Telephone Company ("Michigan Bell") is a Michigan corporation, with its principal place of business in Michigan.

12.     Nevada Bell Telephone Company ("Nevada Bell") is a Nevada corporation, with its principal place of business in Nevada.

13.     The Ohio Bell Telephone Company ("Ohio Bell") is an Ohio corporation, with its principal place of business in Ohio.

14.     Pacific Bell Telephone Company ("Pacific Bell") is a California corporation, with its principal place of business in California.

15.     The Southern New England Telephone Company ("Southern New England") is a Connecticut corporation, with its principal place of business in Connecticut.

16.     Southwestern Bell Telephone Company ("Southwestern Bell") is a Missouri corporation, with its principal place of business in Missouri.

17.     Wisconsin Bell, Inc. ("Wisconsin Bell"), is a Wisconsin corporation, with its principal place of business in Wisconsin.

18.     Illinois Bell, Indiana Bell, Michigan Bell, Nevada Bell, Ohio Bell, Pacific Bell, The Southern New England, Southwestern Bell, and Wisconsin Bell, are referred to herein as "Defendants."

19.     Upon information and belief, the Defendants are subsidiaries of AT&T Corporation ("AT&T").

20.     The Defendants are ILECs as that term is defined in 47 U.S.C. § 251(h).

## JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over all Defendants based on the agreement of the parties, contained in the Level 3 ICA, to submit to personal jurisdiction in St. Louis, Missouri.

22.     This Court has subject matter jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1331 in that Plaintiffs seek recovery of damages and an interpretation of rights under the Telecom Act.

23.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and the Defendants, and the amount in controversy is in excess of $75,000.00.

24.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

25.     This Court has jurisdiction pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because each of the Defendants has consented to personal jurisdiction in St. Louis, Missouri and are, therefore, deemed to reside in St. Louis, Missouri.

## GENERAL ALLEGATIONS

### The Telecom Act

27.     Historically, local telephone service was provided by state-regulated monopolies, now known as ILECs.  The ILECs owned local exchange networks throughout the country, consisting of the physical equipment necessary to send calls to, and deliver calls from, their end-user customers, such as businesses and individual residential customers.  Each ILEC had its own distinct service territory within which other carriers were not allowed to provide service.  The services offered, and prices

charged, by the monopoly ILECs were regulated by public utility commissions in each state.

28.   Congress enacted the 1996 amendments to the Telecom Act to establish a "pro-competitive, de-regulatory national policy framework" that was "designed to accelerate [the deployment of new technology and services and to] open ... all telecommunications markets to competition." H.R. Conf. Rep. No. 104-4568, at 1.  The goal of the Telecom Act was to replace the traditional model of telephone service provided by state-regulated monopolies with a model that relies on market-based competition among carriers.

29.   A new, competing carrier will not be able to win any customers in a market if those customers cannot make calls to, and receive calls from, the ILEC's vast customer base.  It was therefore critical to achieving Congress' pro-competitive goal that ILECs be required to interconnect their networks with CLEC networks for the purpose of exchanging traffic.  To accomplish this goal, the Telecom Act requires ILECs to permit CLECs to interconnect their equipment with the ILECs' networks for the purpose of exchanging traffic.  *See* 47 U.S.C. § 251(c)(2).

30.   Congress specifically required that interconnection be established to exchange two types of traffic: local traffic, called "telephone exchange service;" and "exchange access" traffic, which refers to calls that start with an end user, go through the network of the carrier serving that end user (whether the ILEC or the CLEC), then

through the other carrier's network, and then on to a long distance carrier (or similar traffic going in the reverse direction, *i.e.*, from a long distance carrier to an end user). *See* 47 U.S.C. § 251(c)(2).

31.   The Telecom Act requires ILECs to enter into "interconnection agreements" with CLECs to set the terms, rates, and conditions on which the ILEC will provide interconnection (and other statutorily-mandated services) to the CLEC.  These interconnection agreements are established by negotiation between the ILEC and the CLEC, with state-supervised arbitration procedures available to resolve differences if negotiations fail.  47 U.S.C. § 252(a) – (e).  In addition to the option of negotiating their own interconnection agreements, Section 252(i) of the Telecom Act permits a CLEC to "opt into" an existing interconnection agreement between the affected ILEC and another CLEC.

32.   Section 251(c)(2) of the Telecom Act mandates that ILECs "provide…interconnection" between their networks and CLEC facilities "on rates, terms and conditions that are just, reasonable, and non-discriminatory in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title."  Section 252(d)(1) of the Telecom Act requires that the rates charged for interconnection be based on the ILEC's cost of providing the interconnection.

33.   Section 251(d) of the Telecom Act delegated to the FCC the authority to adopt regulations to implement the Telecom Act.

## The FCC Affirms That ILECs Must Provide Interconnection to CLECs at Cost-Based Rates

34.     Entrance facilities may be used for purposes other than interconnection, such as when a CLEC uses a portion of an ILEC's facilities to serve the CLEC's own end-users ("backhaul").  The use of entrance facilities for backhaul does not involve the exchange of traffic between the CLECs' and ILECs' networks, so to the extent that entrance facilities are used for that purpose, that use does not constitute interconnection.

35.     The FCC has interpreted the Telecom Act to mean that ILECs must provide interconnection to CLECs at cost-based rates, using a cost methodology known as TELRIC (total element long-run incremental cost).  Controversy arose, however, over whether CLECs could require ILECs to provide entrance facilities for backhaul at cost-based rates.  In two decisions on this topic, one in 2003 and another in 2005, the FCC ruled that the requirement of cost-based rates did not apply to backhaul.  In each case, however, the FCC reaffirmed that ILECs must charge cost-based rates for entrance facilities to the extent they are used for **interconnection.**

36.     On August 21, 2003, the FCC issued a ruling known in the industry as the Triennial Review Order ("TRO").  *See* 18 FCC Rcd 16978 (2003).  In the TRO, the FCC affirmed (at ¶ 366) that ILECs must continue to provide entrance facilities for interconnection at cost-based rates.  The FCC stated: "to the extent that [CLECs] need

facilities in order to 'interconnect[] with the [incumbent LEC's] network, section 251(c)(2) of the Act expressly provides for this."

37.    The TRO was challenged in court, and certain aspects of it were vacated. *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).  In response to that court action, on February 4, 2005, the FCC released another ruling, known in the industry as the Triennial Review Remand Order ("TRRO").  *See* 20 FCC Rcd 2533 (2005). The FCC again reaffirmed (at ¶ 140) that ILECs must provide entrance facilities, to the extent that a CLEC needs them for interconnection, at cost-based rates:

> 140. We note in addition that our finding of non-impairment [under 47 U.S.C. § 251(d)(2)] with respect to entrance facilities does not alter the right of competitive LECs to obtain interconnection facilities pursuant to section 251(c)(2) for the transmission and routing of telephone exchange service and exchange access service.  **Thus, competitive LECs will have access to these facilities <u>at cost-based rates to the extent that they require them to interconnect with the incumbent LEC's network</u>.**

(emphasis added, footnote omitted)

38.    In both the TRO and the TRRO, the FCC affirmed that ILECs remained fully obliged to provide entrance facilities to CLECs at cost-based rates under Section 251(c)(2) "to the extent that [the CLECs] require them to interconnect with the incumbent LEC's network."

## The Level 3 Companies Enter Into ICAs with Defendants

39.     On or around February 18, 2005, Level 3 and Defendants entered into the currently effective ICA.  Pursuant to the Telecom Act and the Level 3 ICA, Level 3 has the right to interconnect with the Defendants' networks at cost-based rates.

40.     Recognizing that the TRRO, like the TRO, would likely be challenged in court, Defendants proposed, and Level 3 agreed, to Section 21.1 of the Level 3 ICA. Section 21.1 of that ICA provides that the TRO and TRRO were not fully incorporated into the ICA and that the parties reserved all of their rights, remedies, and arguments regarding those FCC rulings and respecting subsequent government actions that may affect the rights of the parties under that ICA.  Section 21.1 further provides: "If any action by any state or federal regulatory or legislative body or court of competent jurisdiction…affects the rights or obligations of either Party that are addressed by this Agreement…the affected Provision(s) shall be immediately invalidated, modified, or stayed consistent with the action of the regulatory or legislative body or court of competent jurisdiction upon the written request of either Party ("Written Request")".

41.     Certain of the Focal entities (which have been previously merged into Broadwing) and ICG also entered into ICAs with some or all of the Defendants.

42.     Certain of the Focal ICAs contain language comparable to that contained in Section 21.1 of the Level 3 ICA quoted above.  Other of the Focal ICAs and the ICG

ICAs generally provide that in the event that a change in governing law affects a provision of the ICA, the parties shall renegotiate the affected provision.

## Some of the Defendants Provide the Level 3 Companies With Interconnection At Cost-Based Rates

43.     After entering into the ICAs, the Level 3 Companies requested that the Defendants provide, or continue to provide, interconnection through entrance facilities.

44.     Defendants provided and/or continued to provide the Level 3 Companies with interconnection through entrance facilities. Certain defendants had originally billed the Level 3 Companies for interconnection through entrance facilities at cost-based rates pursuant to the ICAs. Other defendants billed for interconnection through entrance facilities to the Level 3 Companies at the higher switched access rates.

## Defendants Refuse to Provide Interconnection At Cost-Based Rates

45.     In an e-mail dated May 16, 2008, AT&T, on behalf of those Defendants that had been correctly billing the Level 3 Companies at cost-based rates, notified the Level 3 Companies that Defendants would no longer do so.

46.     AT&T, on behalf of the Defendants, informed the Level 3 Companies that they were unilaterally converting all of the Level 3 Companies' requests for interconnection with Defendants' networks through entrance facilities from cost-based rates to higher, "switched access" rates set forth in Defendants' tariffs. AT&T wrote, in relevant part:

As a result of the FCC's Triennial Review Order [TRO] and Triennial Review Remand Order (2005) [TRRO], AT&T is no longer required to provide entrance facilities at TELRIC rates. The EF2AC project will convert the embedded base of Local Interconnection Entrance Facilities to Switched Access tariffed services. Currently we have approval to begin conversion in Texas, Oklahoma, Kansas, Arkansas, Ohio and Connecticut. Conversion will begin immediately in Texas with the other approved states to begin later in 1Q08.

47.     In order to continue to provide telecommunication services to end-users, the Level 3 Companies were required to interconnect with Defendants' networks under the terms unilaterally imposed by Defendants, and pay the higher rates.

**The U.S. Supreme Court Confirms that Entrance Facilities Used For Interconnection Should Be Billed At Cost-Based Rates**

48.     On June, 9, 2011, the United States Supreme Court issued its unanimous decision in *Talk America Inc. v. Michigan Bell Telephone, Co.*, 131 S. Ct. 2254 (2011). Deferring to the FCC's interpretation of the Telecom Act, the Supreme Court held that ILECs must charge cost-based rates for entrance facilities used for interconnection, holding: "[T]o satisfy its duty under 251(c)(2), an incumbent LEC must make its existing entrance facilities available to competitors at cost based rates if the facilities are to be used for interconnection."

**Defendants Refuse to Provide Interconnection to the Level 3 Companies at Cost-Based Rates**

49.     After the Supreme Court issued its decision in *Talk America*, Level 3 requested that Defendants provide interconnection under the ICAs at cost-based rates.

50.     Defendants continue to refuse to provide the Level 3 Companies with interconnection through entrance facilities at cost-based rates, and continue to bill the Level 3 Companies for interconnection through entrance facilities at the higher, tariffed rates, rather than cost-based rates, even after *Talk America* was decided.

51.     Defendants insist that the parties must amend the ICAs in order for the Level 3 Companies to be entitled to interconnection through entrance facilities at cost-based rates.   Defendants have proposed an amendment to the ICAs which would require the Level 3 Companies to, among other things, waive their claims to damages as a condition precedent to Defendants allowing the Level 3 Companies to obtain the rates to which they are entitled.   The Level 3 Companies have refused to amend the ICAs in such a manner that it would waive its right to seek damages.   As a result, in violation of the ICAs and the Telecom Act, Defendants continue to charge the Level 3 Companies for interconnection at rates higher than those authorized by the ICAs and the Telecom Act.

52.     Without interconnection between the networks of the Level 3 Companies and the Defendants' networks, customers of the Level 3 Companies could not communicate with Defendants' end users, and vice versa.   As a result, the Level 3 Companies have no choice but to remain interconnected with Defendants' networks on the Defendants' unilaterally imposed terms, in violation of the ICA and the Telecom Act.

14

53.     The Level 3 Companies have requested that Defendants refund the Level 3 Companies the difference between the amounts Defendants billed under the tariffed rates, and the amounts Defendants should have billed under cost-based rates.

54.     Defendants have failed and refused to refund the amounts owed to the Level 3 Companies.

## FIRST CLAIM – BREACH OF THE ICAs

55.     Plaintiffs incorporate the allegations in Paragraphs 1 through 54 as though set forth fully herein.

56.     Plaintiffs have substantially performed all conditions precedent to the ICAs.

57.     Defendants have breached the ICAs by failing and refusing to provide interconnection through entrance facilities at cost-based rates.

58.     As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged in an amount in excess of $75,000.00.

## SECOND CLAIM – VIOLATIONS OF THE TELECOM ACT

59.     Plaintiffs incorporate the allegations in Paragraphs 1 through 58 as though set forth fully herein.

60.     Defendants' refusal to provide interconnection to Plaintiffs at cost-based rates by means of entrance facilities violates sections 201(b), 202(a), 251(c)(2) and 252(d)(1) of the Telecom Act.

61.     Defendants' charges to Plaintiffs for interconnection by means of entrance facilities in excess of cost-based rates violate sections 201(b), 202(b), 251(c)(2) and 252(d)(1) of the Telecom Act.

62.     As a direct and proximate result of Defendants' violation of the Telecom Act, Plaintiffs have been damaged in an amount in excess of $75,000.00.

63.     Pursuant to section 206 of the Telecom Act, Plaintiffs are entitled to an award of the full amount of damages, including their costs and attorneys' fees incurred in prosecuting this action.

## THIRD CLAIM – DECLARATORY JUDGMENT

64.     Plaintiffs incorporate the allegations in Paragraphs 1 through 63 as though set forth fully herein.

65.     There is a genuine, bona fide dispute between the parties regarding whether, in light of the U.S. Supreme Court's decision in *Talk America*, Defendants must, under the ICAs, provide interconnection to the Level 3 Companies through entrance facilities at cost-based rates.

66.     The ICAs require Defendants to provide interconnection through entrance facilities to the Level 3 Companies under the ICAs at cost-based rates.

67.     Plaintiffs are entitled to a declaration that Defendants are, and always have been, obliged under the Telecom Act, the ICAs, and/or applicable FCC rulings, to provide interconnection to the Level 3 Companies by means of entrance facilities

provided at cost-based rates.  Plaintiffs are also entitled to injunctive relief and a writ of mandamus against Defendants pursuant to 47 U.S.C. § 406, that, going forward, Defendants must provide interconnection to the Level 3 Companies by means of entrance facilities provided at cost-based rates.

**FOURTH CLAIM – UNJUST ENRICHMENT**

68.     Plaintiffs incorporate the allegations in Paragraphs 1 through 67 as though set forth fully herein.

69.     In the alternative, Defendants have been unjustly enriched by billing the Level 3 Companies for interconnection through entrance facilities at rates greater than the cost-based rates.

70.     The Level 3 Companies have conferred a benefit on Defendants by paying more than the cost-based rates for interconnection through entrance facilities.

71.     Defendants have retained the benefit from those payments.

72.     Defendants have retained the benefit under inequitable and unjust circumstances.

73.     Defendants should be ordered to disgorge that portion of the interconnection charges paid by the Level 3 Companies in excess of the cost-based rates, which amount is in excess of $75,000.00.

74.     Plaintiffs demand trial by jury on all triable issues.

WHEREFORE, Plaintiffs pray that the Court grant judgment in its favor, and against the Defendants, and award the Level 3 Companies damages in excess of $75,000.00, in an amount to be proven at trial, plus pre-judgment and post-judgment interest, declaratory and injunctive relief and a writ of mandamus as set forth above, their reasonable attorney fees under 47 U.S.C. § 206, their taxable costs, and any other relief the Court deems just and equitable.

Respectfully Submitted,

SPENCER FANE BRITT & BROWN LLP

By:   /s/ Erik O. Solverud
      Erik O. Solverud, #44291MO
      1 North Brentwood Boulevard, Suite 1000
      St. Louis, Missouri 63105
      Telephone:  (314) 863-7733
      Facsimile:  (314) 862-4656
      esolverud@spencerfane.com

Of Counsel:

Joseph E. Jones, *pro hac vice* forthcoming
Timothy J. Thalken, *pro hac vice* forthcoming
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
jjones@fslf.com
tthalken@fslf.com

Michael J. Shortley, III, *pro hac vice* forthcoming
Vice President – Legal
Level 3 Communications, LLC
225 Kenneth Drive
Rochester, New York  14623
(585) 255-1429
michael.shortley@level3.com

ATTORNEYS FOR PLAINTIFFS

868659.10