UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, and BROADWING COMMUNICATIONS, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| ILLINOIS BELL TELEPHONE COMPANY, et al., | ) ) ) |
| Defendants. | ) |

No. 4:13-CV-1080 (CEJ)

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants Illinois Bell Telephone Company, Indiana Bell Telephone Company, Michigan Bell Telephone Company, Ohio Bell Telephone Company, Southern New England Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Southwestern Bell Telephone Company, and Wisconsin Bell, Inc., to dismiss the claims of plaintiffs Level 3 Communications, LLC (Level 3) and Broadwing Communications, LLC (Broadwing), pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[1] Plaintiffs filed a response in opposition and the issues are fully briefed.

I. Background

Level 3 and Broadwing are competitive local exchange carriers (CLECs) and defendants are incumbent local exchange carriers (ILECs), all of whom provide telecommunication services to customers. Because ILECs were once state-regulated

---

[1] On January 7, 2014, the Court issued an order of partial dismissal, dismissing the claims of Broadwing against Southern New England Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Michigan Bell Telephone Company, and Ohio Bell Telephone Company, for lack of personal jurisdiction. [Doc. #31, 32]. As a result, those five defendants bring the instant motion to dismiss only as to the claims of Level 3.

monopolies, the Telecommunications Act of 1966, 47 U.S.C. §§ 151, *et seq.* (Telecom Act), was enacted in order to require ILECs to provide interconnection to CLECs at cost-based rates. See 47 U.S.C. §§ 251(c)(2), 252(d). Interconnection is the physical act of linking the network lines of two carriers so that CLEC customers can send communications to ILEC customers.

In order to ensure compliance with the Telecom Act, the defendants entered into individual interconnection agreements (ICAs) with both of the plaintiffs. Each ICA was reviewed and approved by a state public utility commission. See id. § 252(e) ("Any [ICA] adopted by negotiation or arbitration shall be submitted for approval to the State commission. A State commission to which an agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies.").

Plaintiffs claim that defendants breached the ICAs (Count I) and violated the Telecom Act (Count II) by improperly charging higher rates. Plaintiffs ask the Court to enter a judgment, declaring that defendants must provide interconnection at cost-based rates (Count III). Plaintiffs further allege that defendants have been unjustly enriched by charging plaintiffs at higher rates (Count IV). Plaintiffs move to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

II. **Legal Standard**

Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate if the plaintiff has failed to satisfy a threshold jurisdictional requirement. See Trimble v. Asarco, Inc., 232 F.3d 946, 955 n.9 (8th Cir. 2000). In order to properly dismiss for lack of subject matter jurisdiction, the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. Titus v. Sullivan,

4 F.3d 590, 593 (8th Cir. 1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010) (citation omitted). The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and "[t]his burden may not be shifted to" the other party. Id. (alteration in original; citation omitted).

On the other hand, the purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. See also id. at 563 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

III. Discussion

### A. Count I: Breach of the ICAs

Plaintiffs allege that defendants breached the ICAs by refusing to provide interconnection at cost-based rates. Defendants argue that Count I should be dismissed because disputes over enforcement of ICAs are better addressed in the first instance by the state commissions that approved the ICAs. While defendants acknowledge that the Telecom Act does not explicitly deny federal courts subject matter jurisdiction over ICA enforcement disputes, defendants point to cases in other circuits that have affirmed the dismissal of such claims.

There is a circuit split on the issue of whether a dispute regarding the interpretation or enforcement of an ICA should be brought before the state commission that approved the ICA prior to bringing the dispute in federal court. The confusion arises from the fact that the Telecom Act requires state utility commissions to either approve or reject ICAs, while also instructing that state commission determinations are subject to review in federal court. See 47 U.S.C. § 252(e)(1), (6). The Telecom Act is textually unclear as to whether Congress intended only state commissions to interpret and enforce ICAs and restricted federal courts to review of these initial determinations.

The Third Circuit, in Core Communications, Inc. v. Verizon Pa., Inc., 493 F.3d 333, 344 (3d Cir. 2007), definitively held that "interpretation and enforcement actions that arise after a state commission has approved an [ICA] must be litigated in the first instance before the relevant state commission." In a similar fashion, the Eleventh Circuit, in BellSouth Telecommunications v. MCImetro Access Transmission Servs., 317 F.3d 1270, 1278 n.9 (11th Cir. 2003), stated that a "state commission's authority to approve or reject an [ICA] would itself be undermined if it lacked authority to determine in the first instance the meaning of an agreement[.]" See also Covad Communications

Co. v. BellSouth Corp., 374 F.3d 1044, 1052 (11th Cir. 2004) ("[A] claim directly under the [Telecom Act] *must* be brought in the first instance before the relevant state [commissions].") (emphasis added). The Seventh Circuit is not as definitive on the issue, but has held that such "disagreement[s] should *normally* be referred to the state regulatory agency . . . before the federal court decides the case." Illinois Bell Telephone Co. v. Global Naps Ill., Inc., 551 F.3d 587 (7th Cir. 2008) (emphasis added) (explaining that the state agency is usually in the best position to resolve the dispute).

Contrary to the holdings of the Third, Eleventh, and Seventh Circuits, the Fourth Circuit has recently held that "neither the text of the 1996 Act nor prudential considerations compel federal deference to State commissions in the first instance." Central Telephone Co. v. Sprint Communications Co. of Va., 715 F.3d 504, 515 (4th Cir. 2013). The Fourth Circuit further reasoned that the "goals of competition and efficiency would only be disserved by a requirement that the underlying merits . . . be considered by multiple individual State commissions with the attendant risk of disparate interpretations and dispositions. Nor are we persuaded that State commissions necessarily possess superior expertise to resolve such disputes." Id.; see Sprint Communications Co. v. Cent. Tel. Co., 2013 U.S. LEXIS 7291 (Oct. 15, 2013) (The Supreme Court of the United States denied certiorari).

Although the Eighth Circuit has not addressed this specific issue, it has addressed the level of deference a federal court should exert when reviewing a state commission's determination. In Connect Communs. Corp. v. Southwestern Bell Telephone, L.P., 467 F.3d 703, 713 (8th Cir. 2006), the Eighth Circuit held that the "interpretation of interconnection agreements rightly belongs to the state commissions, and we will not overturn one in favor of another without the showing of an arbitrary or capricious

decision." While it is unclear what the Eighth Circuit meant by the phrase "rightly belongs to the state commissions," this Court finds <u>Connect</u> distinguishable from the instant case. <u>Connect</u> dealt with the review of a decision already issued by the state commission and the standard of review a federal court should apply. Here, the Court is faced with the narrow question of whether the state commission, as a prudential matter, is the more appropriate body to resolve ICA interpretation and enforcement.

This Court is persuaded by the reasoning in <u>Central Telephone</u> and agrees that federal courts have subject matter jurisdiction over claims involving the interpretation and enforcement of ICAs. In <u>Central Telephone</u>, the court requested that the FCC submit an amicus brief regarding the issue at hand. The FCC stated that the Third Circuit misinterpreted an earlier FCC decision and clarified that the earlier decision did "not hold that state commissions are the only entities with that responsibility" and that such an interpretation would be "inconsistent with the broad adjudicatory authority that [other sections] of the [1966] Act confer on the FCC and federal district courts." <u>Central Telephone</u>, 715 F.4d at 514 (citing FCC Amicus Br. at 11, 15).

Although defendants argue that the court in <u>Central Telephone</u> inappropriately deferred to the FCC's amicus brief, this Court cannot agree. The court in <u>Central Telephone</u> conducted an independent analysis of the statutory text of the Telecom Act and further considered whether, as a prudential matter, a state commission would be a more appropriate initial forum. <u>Id.</u> at 512-515. These considerations show that the court did not rely solely on the FCC's conclusions.

Following <u>Central Telephone's</u> rationale, this Court agrees that "Congress could have made review by a State commission in the first instance an *exclusive remedy*; it used this very phrase when discussing the review of an FCC preemption action." <u>Id</u>. at

512 (emphasis in original) (citing 47 U.S.C. § 252(e)(6)). Additionally, the Court finds it inappropriate to follow the Third Circuit when the FCC has instructed that <u>Core Communications, Inc. v. Verizon Pa., Inc.</u> was partly decided on an incorrect interpretation of an FCC decision. Moreover, this Court declines to support the blanket statement that all state commissions possess superior expertise in resolving all ICA interpretation or enforcement related disputes. The Telecom Act is a federal law that allows federal courts to review state commission determinations. While the Court acknowledges that some complex contractual disputes may be more well-suited for a state commission to resolve, many other issues are well within the federal court's capabilities, such as the instant question of whether plaintiffs are entitled to cost-based rates under their ICAs. Accordingly, Count I will not be dismissed for lack of subject matter jurisdiction.

### B. Count II: Violations of the Telecom Act

Plaintiffs allege that defendants violated 47 U.S.C. §§ 201(b), 202(a), 251(c)(2) and 252(d)(a) of the Telecom Act by refusing to provide interconnection at cost-based rates. Plaintiffs further allege that defendants violated §§ 201(b), 202(b), 251(c)(2) and 252(d)(1) of the Telecom Act by charging higher rates. Defendants argue that Count II should be dismissed because there can be no claim for violations of §§ 251 and 252 and because plaintiffs fail to state a claim under §§ 201 and 202.

#### 1. Sections 251 and 252

Section 251(c)(2) places a duty on ILECs to provide "any requesting telecommunications carrier, interconnection with the local exchange carrier's network . . . on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of

this section and section 252." 47 U.S.C. § 251(c)(2). In order to fulfill the duties imposed by § 251(c)(2), an ILEC must enter into an ICA with a requesting CLEC. Section 252(d) sets out the procedures for the negotiation, arbitration, and approval of an ICA.

In their motion to dismiss, defendants initially argued that once an ICA is approved, a CLEC alleging a breach of that ICA may not also bring claims alleging violations of §§ 251 and 252. Defendants reasoned that once an ILEC fulfills its duties by entering into an ICA and providing interconnection, an ILEC can no longer violate §§ 251 and 252. However, after plaintiffs cited to an FCC decision stating the contrary, defendants modified their argument. See Core Communications Inc. v. Verizon Md., Inc., 18 FCC Rcd. 7962, 7971-7973 (2003) ("[T]he Act . . . require[s] Verizon not only to enter into interconnection agreements, but also to comply with their terms."). In their reply brief, defendants acknowledge that "in certain circumstances a violation of an ICA can also constitute a violation of section 251," but argue that Count II should still be dismissed because plaintiffs "made no mention of the ICAs, and instead simply allege[d] [that] the AT&T ILECs violated sections 251 and 252 by failing to provide entrance facilities at cost-based rates, apparently irrespective of what the parties' binding ICAs may provide." [Doc. #28, at 10].

The Court is not convinced by defendants' secondary argument. While it is true that Count II of the complaint does not, in those words, allege that defendants violated §§ 251 and 252 *as a result of* their breach of the ICAs, it is clear, when reading the complaint as a whole, that this is what the plaintiffs intended in Count II. See Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2006) (A complaint must be liberally construed in the light most favorable to the plaintiff). Plaintiffs complaint, as a whole,

makes clear that it is alleging that defendants breached the ICAs. Section 251(c)(2) expressly requires defendants to provide interconnection "on rates . . . *in accordance with the* terms and conditions of any agreement." Accordingly, the allegations in Count II regarding §§ 251 and 252 are sufficient to state a claim.

### 2. Sections 201 and 202

Section 201 states that it "shall be the duty of every *common carrier* engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request" and that all "charges . . . for and in connection with such communication service, shall be just and reasonable[.]" 47 U.S.C. § 201(a), (b) (emphasis added). Section 202 further states that it "shall be unlawful for any *common carrier* to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service[.]" Id. § 202(a) (emphasis added).

Defendants argue that §§ 201(b) and 202(a) only apply to charges or practices of common carriers and that defendants were not acting as common carriers when they were providing interconnection to plaintiffs. Defendants point to the definition section of the Telecom Act, which provides that: "A telecommunications carrier shall be treated as a common carrier under this Act only to the extent that it is engaged in providing telecommunication services[.]" Id. § 153(51). "The term 'telecommunications service' means the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." Id. § 153(53). Defendants argue that because interconnection is not a telecommunications service as defined by the Telecom Act, it is not subject to common carrier liability under §§ 201(b) and 202(a).

-9-

The Court finds Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc., 287 F.Supp.2d 532 (D.N.J. Sept. 30, 2003), to be instructive. The defendants in Global Naps similarly argued that there was a difference between providing telecommunication services and fulfilling the duties of interconnection pursuant to §§ 251 and 252. The Global Naps defendants argued that "because their duties under §§ 251 and 252 [did] not involve providing telecommunication services, they [could] not be treated as common carriers with respect to [those] duties." Id. at 546. The court in Global Naps agreed with defendants, stating that it did "not appear that providing interconnection to a competitor satisfies the definition of 'telecommunications services[.]'" Id. at 547. The court explained:

> [T]his Court must assume that if the framers of the statute intended to include "interconnection" in the definition of "telecommunications services" they would have done so. Instead, "interconnection" is discussed in terms of "duty" and "obligation," (see 47 U.S.C. §§ 251 and 252), not in terms of the activities that carriers engage in with regard to the provision of telecommunications services. As such, this Court concludes that [defendant] is not engaged in providing "telecommunications services" when carrying out its duties under §§ 251 and 252 of the 1996 Act[.]

Id.

This Court agrees with the rationale of Global Naps and concludes that defendants are not subject to the common carrier liability created by §§ 201 and 202. Accordingly, the allegations in Count II regarding §§ 201 and 202 will be dismissed for failure to state a claim.

### C. Count III: Declaratory Judgment

Plaintiffs request the Court to issue a declaration that defendant's refusal to provide plaintiffs with interconnection at cost-based rates violates the terms of their ICAs and the Telecom Act. Defendants acknowledge that Count III is "permitted only

to the extent [p]laintiffs' underlying claims survive the motion to dismiss." As discussed above, Count I and a portion of Count II survive defendants' motion to dismiss. See Century Indemnity Co. v. Anheauser-Busch Inc., 4-11-CV-1097-CEJ (E.D.Mo. Mar. 19, 2012) (A federal court may declare the rights and legal relations of a party in a case of actual controversy); Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 812 (8th Cir. 1969). Accordingly, Count III will not be dismissed.

### D. Count IV: Unjust Enrichment

Plaintiffs allege that defendants have been unjustly enriched by billing for interconnection at higher rates. Defendants argue that Count IV must be dismissed for failure to state a claim because the terms governing interconnection are specifically covered by the parties' ICAs and that unjust enrichment cannot apply where the subject matter is addressed by an express contract. Plaintiffs respond that they intended to plead the claim of unjust enrichment in the alternative to the breach of contract claim.

"Missouri law does not permit a plaintiff to recover under both an express contract and unjust enrichment." Franke v. Greene, 4:11-CV-1860-JCH, at 8 (E.D.Mo. Aug. 6, 2012). "Nonetheless, '[t]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [his] complaint.'" Id. (citing Owen v. General Motors Corp., 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006)); see also Fed.R.Civ.P. 8(d) (plaintiffs may allege alternative claims).

While plaintiffs' unjust enrichment claim is "not explicitly pled in the alternative, [plaintiffs] clearly intended it to operate as an alternative cause of action to [their] breach of contract claim . . . The Court will not require hypertechnicality in pleading these claims in the alternative." Franke, 4:11-CV-1860-JCH, at 9. Thus, the allegations

in Count IV state a claim and will not be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss [Doc. #12] is **granted in part** and **denied in part**.

An order of partial dismissal will be filed separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2014.