UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, LLC, AND BROADWING COMMUNICATIONS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ILLINOIS BELL TELEPHONE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

No. 4:13-cv-01080-JAR

## **MEMORANDUM & ORDER**

This matter comes before the Court on Plaintiffs' motion for reconsideration (Doc. No. 131) and Defendants' motion for partial summary judgment (Doc. No. 122). The motions have been fully briefed and are ready for disposition. For the reasons set forth below, the motion for reconsideration will be denied, and the motion for partial summary judgment will be granted.

### **Background**[1]

This lawsuit arises out of a contract dispute between Level 3 Communications, LLC and Broadwing Communications, LLC ("Plaintiffs") and Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Michigan Bell Telephone Company, Nevada Bell Telephone Company, Ohio Bell Telephone Company, Pacific Bell Telephone Company, Southwestern Bell Telephone Company, and Wisconsin Bell, Inc. ("Defendants"). Defendants are incumbent local telephone companies, or incumbent local exchange carriers ("ILECs"), located in twelve states. Plaintiffs are competitive local exchange carriers ("CLECs") offering competing telecommunications services in the twelve states where Defendants are ILECs.

---

[1] To avoid repeating the background and litigation history contained in previous Court Orders, the Court will only discuss facts pertinent to the motions before the Court.

Plaintiffs and Defendants entered into bilateral interconnection agreements ("ICAs"), under which a Defendant provided interconnection to a Plaintiff in accordance with the Telecommunications Act of 1966, 47 U.S.C. §§ 151, et. seq. ("the Act"), which governs ILECs and CLECs.[2]

In Phase I of this lawsuit, the central issue was whether Defendants violated the terms of the ICAs when they charged Plaintiffs for the use of entrance facilities[3] at a rate that exceeded lower "cost-based rates." Defendants asserted a number of affirmative defenses, including that several of Plaintiffs' claims were time-barred. On April 10, 2017, the Court ruled that Defendants' practice of charging rates higher than cost-based rates violated the terms of the ICAs ("April 10 Order"). The Court relied on the Supreme Court's decision in *Talk America, Inc. v. Michigan Bell Tel. Co.,* 564 U.S. 50, 63 (2011). There, the Supreme Court addressed Defendant's practice of charging higher rates for the use of its entrance facilities and held that the Act required Defendants to provide entrance facilities used for local interconnection at lower cost-based rates. *Id.*

Here, the Court also held that under the terms of the ICAs, Plaintiffs had to bring any billing dispute within 12 months of the event giving rise to the dispute. However, with regard to billing disputes arising before *Talk America*, the Court held that those claims were tolled until the Supreme Court made its decision on June 9, 2011. The Court further held that any billing dispute occurring after *Talk America* had to have been brought within 12 months of the occurrence giving rise to the dispute. (Doc. No. 110).

On July 24, 2017, upon request of the parties, the Court clarified its April 10 Order and held that (1) the two-year statute of limitations under the Act could be tolled by private agreement, and

---

[2] Interconnection is the physical act of linking the network lines of two carriers so that CLEC customers can send communications to ILEC customers.

[3] Entrance facilities are high-capacity transmission circuits used to connect an ILEC's network with a competitor's network. (Defendant's Statement of Material Facts, Doc. No. 124, at ¶ 6).

the parties did so through the ICAs; (2) all billing disputes that were tolled under *Talk America* but not filed within 12 months (or by June 9, 2012), were untimely and barred; (3) all billing disputes occurring more than 12 months before June 7, 2013 (the date that this lawsuit was filed), were untimely; and (4) all billing disputes occurring within 12 months of June 7, 2013 were timely ("July 24 Order"). (Doc. No. 117).

Defendants now bring the instant partial motion for summary judgment regarding damages, relying on the Court's July 24 Order. Specifically, Defendants request that the Court enter partial summary judgment in favor of Defendants with regard to damages based on invoices issued to Level 3 with bill dates before June 7, 2012.

Plaintiffs filed an opposition and motion for reconsideration of the Court's July 24 Order. Plaintiffs argue that (1) the Level 3 ICAs[4] contain two internal competing limitations periods, so the longer period should apply; (2) the two-year statute of limitations under the Act should control; and (3) Plaintiff Broadwing Texas' claims are not time-barred under the language of that specific ICA.

Several provisions of the ICAs are relevant to the motions before the Court. Specifically, the Level 3 ICAs contain the following language concerning dispute resolution:

**10. DISPUTE RESOLUTION**

10.1  No claims, under this Agreement or its Appendices, shall be brought for disputed amounts more than twelve (12) months from the date of occurrence which gives rise to the dispute.

\* \* \*

10.6.  Dispute Resolution

10.6.1 No claims shall be brought for disputes arising under this

---

[4] For purposes of clarity, the Court will refer to the ICAs entered into between Plaintiff Level 3 Communications, LLC and AT&T, for the states of Arkansas, California, Illinois, Indiana, Kansas, Michigan, Missouri, Nevada, Ohio, Oklahoma, Texas, and Wisconsin, as the "Level 3 ICAs." (Doc. Nos. 84-2 through 84-15). It appears undisputed that the provisions of the Level 3 ICAs are substantially identical.

Agreement or its Appendices more than twenty-four (24) months from the date of occurrence which gives rise to the dispute . . .

\* \* \*

(Doc. No. 84-2 at 38-39). The Level 3 ICA also contains a "Conflict in Provisions" section, which states: "In the event of a conflict between the provisions of this Agreement and the [Telecommunications] Act, the provisions of the Act shall govern." (Doc. No. 84-2 at 9).

The Broadwing Texas ICA[5] contains the following provisions regarding dispute resolution:

**11.0 DISPUTE RESOLUTION**

11.1 General Finality of Disputes

11.1.1 Except as otherwise specifically provided in this Agreement, no Claims will be brought for disputes arising from this Agreement more than 24 months from the date the occurrence which gives rise to the dispute is discovered or reasonably should have been discovered with the exercise of due care and attention.

\* \* \*

11.8 Limitation on Back-billing and Credit Claims:

11.8.1 Notwithstanding anything contained in this Agreement to the contrary, a Party shall be entitled to dispute only those charges which appeared on a bill dated within the twelve (12) months immediately preceding the date on which the Billing Party receives notice of such dispute

\* \* \*

(Doc. No. 84-19 at 25, 27).

## Discussion

**a. Motion for Reconsideration**

A district court has "the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017

---

[5] Plaintiffs challenge only the Broadwing Texas ICA. Therefore, only the provision of that ICA will be included in this Order.

(8th Cir. 2007) (internal quotation marks and citation omitted). Although the Federal Rules of Civil Procedure do not expressly provide for motions to reconsider, Rule 54(b) encompasses the power to revise an interlocutory order any time prior to the entry of final judgment. *See Thunder Basin Coal Co., L.L.C. v. Zurich Am. Ins. Co.*, 2013 WL 6410012, at *1 (E.D. Mo. Dec. 9, 2013); *Trickey v. Kaman Indus. Techs. Corp.*, 2011 WL 2118578, at * 1–2 (E.D. Mo. May 26, 2011); *Jiang v. Porter*, 2016 WL 193388, at *1 (E.D. Mo. Jan. 15, 2016) (applying Rule 54(b) to a motion to reconsider the denial of a motion to dismiss).

Under Rule 54(b), the Court may amend or reconsider any ruling to correct any "clearly or manifestly erroneous findings of facts or conclusions of law." *Prosser v. Nagaldinne,* 2013 WL 308770 at *1 (E.D. Mo. Jan. 25, 2013) (quoting *Jones v. Casey's Gen. Stores,* 551 F.Supp.2d 848, 854 (S.D. Iowa 2008)). A motion to reconsider under Rule 54(b), however, is "not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V-Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015); *see also Evans v. Contract Callers, Inc.*, No. 4:10-CV-2358 (FRB), 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012) ("Although the Court has the power to revisit prior decisions of its own . . . in any circumstance, [it] should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (internal quotation marks and citation omitted; formatting in original)).

Here, Plaintiffs seek reconsideration of the Court's July 24 Order "due to the sparse briefing on the issue and multiple issues before the Court." (Doc. No. 133 at 1). They also contend that the Court's interpretation of the contractual limitations period is clearly erroneous because it conflicts with the Act's two-year statute of limitations. (*Id.* at 5). The Court disagrees.

Plaintiffs have had ample opportunity in this litigation to present their arguments regarding the limitations period applicable to their claims when the Court addressed the merits of Defendants'

affirmative defenses. (*See* Doc. Nos. 86 and 96). Now, Plaintiffs assert new grounds for their assertion that a number of their claims are not time-barred under the ICAs. However, these arguments could, and should, have been raised when the Court was making its determination in Phase I on liability.

Moreover, the Court has carefully reviewed the Order that is the subject of the motion for reconsideration and finds the holding to be correct under the law. Judge Jackson determined that the parties entered into contracts containing provisions with a one-year period during which billing disputes must be raised. This one-year period is shorter than the applicable statute of limitations, and such provisions are enforceable. *See e.g., MFS Intern., Inc. v. International Telcom Ltd.*, 50 F. Supp. 2d 517 (E.D. Va. 1999) (holding that parties may, in contract to provide telecommunications services, agree to limitations period shorter than two-year period prescribed in 47 U.S.C. § 415(b)); *Ellis v. Daimlerchrysler Corp.*, No. 403CV00546HEA, 2005 WL 7857782, at *4 (E.D. Mo. Mar. 9, 2005) ("courts almost invariably uphold contractual limitation periods of six months or more, especially where the parties have equal bargaining power and the limitation period does not effectively preclude the plaintiff's remedy"). Thus, the holding is not "clearly erroneous," nor did it constitute manifest injustice.

Further, where, as here, the parties are sophisticated business entities who rely on experts to advise them, the language they have mutually negotiated and agreed to is the best evidence of what they intended. *See, e.g. In re SRC Holding Corp.*, 545 F.3d 661, 668 (8th Cir. 2008); *enXco Development Corp. v. Northern States Power Co.*, 758 F.3d 940, 947 (8th Cir. 2014). Accordingly, the Court will deny Plaintiffs' motion for reconsideration.

b. **Motion for Partial Summary Judgment**

The standards applicable to summary judgment motions are well settled. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999) (citations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inference." *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir. 1990).

In their motion for partial summary judgment, Defendants maintain that under the July 24 Order, the Court determined as a matter of law that the ICAs barred as untimely certain damages sought by Plaintiff Level 3 Communications. Specifically, the Court held that (1) "all Level 3 and Broadwing Texas billing disputes that were tolled until *Talk America* but not filed before June 9, 2012 are untimely and barred" and (2) "all Level 3 and Broadwing Texas billing disputes occurring more than twelve months before June 7, 2013[6] are untimely pursuant to the Level 3 and Broadwing Texas ICAs and therefore barred." (Doc. No. 117 at 8).

The following facts are asserted by Defendants and undisputed by Plaintiffs. During Phase II discovery, Plaintiffs produced four spreadsheets ("damages spreadsheets") showing, on a circuit-

---

[6] Plaintiffs filed their lawsuit on June 7, 2013. (Doc. No. 1).

by-circuit basis, the damages that Plaintiffs are claiming.[7]  (Defendants' Statement of Uncontroverted Material Facts ("DSOF"), Doc. No. 124, at ¶ 19).  Defendants maintain that the damages spreadsheets show that Plaintiffs claim approximately $19.8 million in purported damages, and $9.2 million in interest (totaling $29 million).  (DSOF at ¶ 22).  Invoices issued to entities other than Plaintiff Level 3 Communications total $2.063 million.  (DSOF at ¶ 23).

The Court's July 24 Order held, in effect, that all invoices pre-dating *Talk America* were barred as untimely because Plaintiffs failed to file a lawsuit asserting those claimed damages within 12 months of the *Talk America* decision. Invoices dated before June 7, 2012 were also barred as untimely.  Therefore, Defendant is entitled to summary judgment in its favor regarding damages based on invoices issued to Plaintiff Level 3 with bill dates before June 7, 2012.[8]

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for reconsideration (Doc. No. 131) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for partial summary judgment (Doc. No. 122) is **GRANTED**, as set forth in this Order.

Dated this 24th day of January, 2019.

John A. Ross
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

---

[7] The damages spreadsheets organize the circuits into four categories, with a separate spreadsheet for each category: Broadwing DS1s [Bates No. LVLT051816], Broadwing DS3s [Bates No. LVLT051817], Level 3 DS1s [Bates No. LVLT051818], and Level 3 DS3s [Bates No. LVLT051819].  DS1s and DS3s are types of telecommunications facilities over which telephone calls are transmitted.  (DSOF at ¶ 20).

[8] Defendants' motion only concerns amounts sought by Plaintiffs that are based on invoices issued to Level 3 with bill dates before June 7, 2012.  (Doc. No. 122 at ¶ 5).